Good morning, Your Honors. I'm Rami Kanyali for the appellant. In reviewing my paperwork, I think I've repeated my arguments again and again and packaged them in different ways, so I don't want to exhaust the Court with more repetitive arguments, so I'm going to take some time and then reserve some time for rebuttal. If you have any questions for me, I'll be happy to entertain them at the beginning, but the only point that I wanted to make to start with is that I think that when you analyze this case, you analyze it from the point of view of looking at it and saying something went wrong. Something went very wrong, and it's disturbing. It's disturbing that this man was taken from his business, spent two months in jail, and then said, okay, see you later. Never had a chance to go to trial, never had a chance to confront any of the witnesses or anything like that, and it was dismissed sua sponte. Well, I... Go ahead. Please. Well, I mean, how can you complain about that? Well, I'm focused on the investigation. There was no probable cause to... How do we know that? We know that because the police report itself specifies, do not arrest pending further investigation. That's the first clue that you have that says there's no probable cause. If they had probable cause, they would arrest right there on the spot. When the police says that in the complaint, it says this is something very fishy. Investigate this further. There could be other reasons why they want further investigation. There are lots of people for whom law enforcement officials have probable cause, ample probable cause, no question about it, but for various reasons they've decided they don't want to move forward until they've obtained more information. They might still be gathering evidence. What I'm saying is that the premise of your argument appears to be, well, if they didn't arrest at the first possible opportunity or if an ADA ultimately decided not to prosecute, there must not have been probable cause. And I just don't think either of those are logical inferences. No, I think what happens is you have to look at what the facts of the case to really understand it. And so you look at the status of the case when the black and white took the report. And then so then this was handed after the black and white. It was handed to Detective Novacek. And then you look at what happened with her. Well, what happened with her is the case went from a suspicious case to a case that couldn't possibly go anywhere. Well, it went to a case where a judge issued an arrest warrant. The judge issued an arrest warrant, Your Honor, relying on the prosecution, and I invoke Awad for this purpose. There was no probable cause because you look at, again, look at what happened. Look at the sequence of events. Look at what these people said. You had, first of all, you had, I'll go into this if you like. Well, I think you better because you're trying to get us to reject a judicial officer looking at the evidence presented, concluding there's probable cause to issue an arrest warrant, and issuing that warrant. Now, to undermine that, I think you've got to make a pretty compelling showing that something was way off. You haven't suggested in any fashion, I don't think there's any evidence to support a suggestion, that the judicial officer was corrupt, incapacitated, suffering from Alzheimer's, anything else. So why is it that we're supposed to disregard what the judicial officer decided in issuing the arrest warrant? I think when you look at what the judicial officer, you're talking about the judge, what the judge did, you have to, first of all, look at the reports and look at the evidence that would have been submitted to the judge. And I tell you, Your Honor, there's no way on earth you could look at that. First of all, the first thing that you presented with is this very poisonous and horrible police report. It's a horrible, these are horrible allegations. Anybody that would, so the first thing that happens when you pick this up, you're already poisoned. And so, and then you start looking at it, Alyssa and Melissa, they sound the same, but if you start paying attention to the information in front of you, and you look into details into it, then you realize that there's something very, very wrong. And what happens is, the most important thing to recognize is that these girls said, their story in the black and white, and three days later with Novacek, are dramatically inconsistent. I mean, they just, you know, they do not, they're inconsistent. They just are completely inconsistent. One, first of all, Alyssa said that Melissa, when they talked to the black and white, Melissa said that she went first, that she would interview for a very short time, and then she waited, and then her sister went in, and then Alyssa went in, and she was interviewed for about an hour, and she came out, she was very disturbed, she revealed that she had been touched, and I don't know what happened for an hour, I mean, that's kind of, you know, how do you fill an hour, that she had been touched, and that she was deeply disturbed, and they were frightened, and they left. Now, when they did the interview three days later, now Melissa said that Alyssa went first, and that when she came out, she was frightened, and then he told her about the molestation, but then Melissa herself went in, and she wasn't touched, and then she left, and they asked for applications, no frightening or anything like that. They asked for applications. So these stories are dramatically inconsistent, and warrant, I mean, you have a professional investigator and the detective, and then she... The inconsistency, in a nutshell, is what? That which one went first? No, it's not just which one went first, because when they said which one went first, there was a follow-up to what happened afterwards, that okay, when her sister came out, they were very frightened, and they left right away. Okay, that was, so that was, it's not possible to take what they're saying and see a consistent story. It's just not possible. The story falls apart, because not only did she report she went first, but she reported all these things that were a result of having gone first. But then this whole thing flipped around. Can I focus you on this point, because I'll just, let me be very up front with you. In a case in which a judge looked at the evidence and concluded there was probable cause, I mean, I just think you're, you recognize that you're... I'm calling them out, I know that. It's an uphill battle. It's an uphill battle. What I would need to see to be persuaded that your client should be able to go forward is some evidence that the prosecutor who presented the evidence to the judge, either concealed evidence, falsified evidence, acted in bad faith in some way to basically corrupt the judge's own review of the evidence. So is there something that you can point me to that gets to that issue? I don't believe that the prosecutor acted in bad faith. I think the prosecutor was just misled by the officer, Detective Novacek, because what happened is I deposed the prosecutor who went forward with this case. And before the deposition, even during the deposition, I said, here are these reports. Do you see any inconsistency? And he could not find any inconsistency in the reports. Because, frankly, it's easy to lose Alyssa and Melissa. It's, you know... Let me just clarify my question. Very easy. Either the prosecutor or the detective engaged in some kind of bad faith conduct. Yes. And I believe the detective engaged in bad faith. Okay. So focus me on that. What's your best case study? Well, what the detective did is, so she first, she took the black and white report and then she did her interviews. And the interviews turned out to be completely inconsistent, which she found. So therefore, she undertook an undercover operation to test the credibility of the witnesses. And the undercover operation failed, but she reported as corroborative of what her investigation concluded. But it wasn't. And I would also point that this detective knew this man from a long time ago, had a relationship with him, because he had to register. And then also, furthermore, that she didn't even, she had him, she already had sent the paperwork to immigration stating that she had somebody in custody. That's seven days when she first, seven days when she first got the case. That was her first action. So she had already preordained that he was going to be arrested. And she misled the prosecution, the prosecutor, as to the dramatic inconsistency in the case. And when they sat down and looked at it, they figured it out, that this is really, this case wasn't going anywhere, that the facts were completely inconsistent. Okay. So if I, let me just make sure I understand your point. The best evidence you have that the detective acted in bad faith is concealing the inconsistencies between the victim's statements to the prosecutor? Is that? That is correct. She concealed it and she obfuscated it by adding on the, layering it on. She layered on the undercover investigation as something that corroborates the investigation, but it did not. Okay. Just, okay, be specific about that. What did the detective falsify to the prosecutor in terms of that? Yes. The detective said that it corroborated the, that this guy was a, well, the only thing it said corroborated that he didn't have any applications. That was the one thing that she said. But she said, she stated that this investigation corroborated what occurred. But, in fact, she did not say what didn't happen, that how he reacted, that he didn't do anything, that he just, it's okay, you want to, you want to, you know, leave me your name and I'll call you back. I don't have any applications. That's the only thing that happened. But the prosecutor knew. I mean, that, that, those facts weren't withheld from the prosecutor, were they? Again, it's, it's, he was given a report that there's no way that you can look at this report and conclude, see what's wrong. It's not. He was, you know, it's not possible. You're a busy prosecutor. You look at the report. You have to go through it several times very carefully to see what's going on. But she, she, the detective, was that person responsible for doing that and did that. That, that's the problem. I know, I know there's a mountain to climb, but, but let's talk about the reality of our system. I mean, the system, the court is overwhelmed. It's overwhelmed. So when the judge gets this, this case and it's endorsed by the prosecutor and she picks up this report, and it's an awful report. Again, no, the prosecutor didn't spend time going through the report, figuring out who Alyssa, who Alyssa is and why there's, there's such a big problem with what they're saying, and neither did the judge. The judge wouldn't have, I mean, it, it, you can say that's what the judge did. But, Your Honor, I tell you, I think it's a fiction. It's a fiction that we have to indulge in to get there. And all we're asking is for this man to have a day in court. He didn't have a day in court down in, in the criminal court. He didn't have a day in court in the civil court. And, and I think that's, that's pretty distressing. And, and therefore this, this case, it's, it's a unique case. It's a unique case. Because you could, again, she presented this, this report and it looks like, okay, it looks like a very, very damning report. Unless you look at its four corners very carefully, very carefully. It's, it's very hard to, to, you know, to sort out the nuances. It's because their names are matched. Alyssa, Melissa, they, they actually even look alike. They're twins. So that's, that's what, again, I mean, that's all I have for you. I, I can't say otherwise. But what did, the district court went through all of the contentions. Did the, did the district court miss something as to the fabrication or what, what, I mean, I. District court, I mean, the judge said, well, do you have any proof that he didn't do it? That's what the judge told me in, in the hearing. Well, I'm looking at the, at the written record for the, the judge's order. I think the judge did not. It found that the investigation was, was, was, was, was okay and that, that the, that probable cause supported the arrest warrant. But I, so what, where did the district court go wrong? Was there a contention that the district court is not dealing with? Yes, I think the district court did not grant the inferences that the, the, the appellant is entitled to on summary judgment. Again, summary judgment, this, this is a summary judgment. And summary judgment, all the planets have to line up to grant a summary judgment. Otherwise, you, you, someone gets a trial. And, and we're just asking for a trial. I'm not coming to you after a trial had, had occurred. This man has never been availed, a trial has never been availed to him. And, and she, she made, her error was in not granting the inferences that are, are, that she should grant to, to the appellant. That's where the error occurred. And again, I think the judge was really poisoned. I can't imagine, which is, well, do you have any proof? It's a very difficult case because when you pick up this, this police report, it's a poisonous police report. It's very hard to, I mean, it makes you wince and you kind of want to take a shower and it's very, it was very difficult for me. I had the man come in back and forth. We see a lot of very ugly facts situations. Yes. This is. So it was, it was difficult for me. And, and, and, but, but I think that influenced the judge. I think the judge did not grant the inferences. I listed all the inferences that she should have granted in my, in my brief, and I can go over them if you like. But I had a number of inferences, about five or six inferences that should have been granted to the appellant. Maybe you could save the little bit of remaining time you have for rebuttal. Sure. Thank you. Good morning. May it please the Court. My name is Jonathan McCavity on behalf of the County of Los Angeles, Los Angeles County Sheriff's Department, the City of La Puente, and Detective Lori Novacek. This case is about probable cause. Plaintiff's claims rise and fall on whether or not probable cause existed for his arrest. As the Court pointed out, it is undisputed that the appellant's arrest was pursuant to a valid judicial warrant. That warrant has not been challenged. That warrant has not been invalidated. There is no evidence before the Court that Judge Deisman, in granting, in approving the warrant, having reviewed all the evidence presented to her, that she was influenced, unduly influenced, corrupted, there was some pressure exerted on her by the prosecutor or by the detective to issue the warrant. Nor is there any evidence that the district attorney, having been given all of the investigative materials by the detective, was pressured, influenced, or corrupted. In fact, the undisputed facts in the evidence submitted at the district court level were specifically the opposite. The district attorney specifically said that Detective Lori Novacek never imposed any pressure on him, never admitted facts, never exerted any, anything untoward to him to file these charges. Maybe you can just address counsel's argument that the detective did conceal, in some fashion, the inconsistencies between the victim's statements from the prosecutor? Your Honor, that's simply just not the case. The evidence before this court, before the district court, was that Detective Novacek presented all of her investigative materials to the district attorney. The district attorney even said he was aware that the girls, there were some inconsistencies on who went first at the time of the alleged crime, but that in the district attorney's opinion, those inconsistencies, fully aware of them, was expected and typical in cases like this. When you have younger female victims of crimes like this, it's not unlikely, and in fact, more likely to have some minor inconsistencies off. And the fact that one of the victims was reluctant to tell the two male officers on the street when they originally responded to this event, but later in the confines at a detective station with a female detective, was more candid with her, again, the district attorney was aware of that fact, as was the detective, and that actually supported their position that the girls were believable, because in their experience, I think 20-some odd years between both of them, that it's common for victims like this to initially be reluctant to say certain things in the field, but later become more candid behind closed doors with a detective. All of this information was not hidden. There was nothing omitted. Her investigative packet was presented to the district attorney. Counsel says that the district attorney must not have read it, or they're very busy, that it's so big. There's no evidence of that. The evidence is that the district attorney read the entire packet, knew some of the inconsistencies, felt they were minor, felt that there was probable cause, and the district attorney presented a filing, a misdemeanor criminal filing. That filing, along with the detective's packet, was presented in its entirety to the judge, the judge having reviewed everything, again, determined that there was probable cause, and issued the arrest warrant. Counsel likes to say that the judge was busy, the judge shouldn't have read it. Although the judge read it, we really know she didn't read it. This is all speculation and all purely argument. There's nothing before this court to suggest that this judge did not read what she was given, nor did the district attorney read what he was given, and further, they were aware of these alleged inconsistencies when they, well, at least the district attorney was, but he said it was minor and had no bearing on his decision to file. Maybe you could also address counsel's argument that the detective misled the prosecutor into thinking that the results of the undercover operation, such as it was, corroborated the victim's testimony. Sure. Again, there's nothing before the court in the record to suggest that. That's, again, argument of counsel. The undercover operation was done after the detective interviewed the victims, and although the detective said at that time she felt she did have probable cause based on what the statements were made to the deputies in the field, she conducted her own interviews after giving witness admonition, separating them from a room. She felt that she had probable cause at that time to make an arrest. However, her testimony was that just to be more thorough, she did an undercover operation which consisted of a younger-looking female detective wearing a backpack, and she went into the restaurant. And her results, and again, the record's clear, was that it was not, nothing incriminating was gathered, but nothing exculpating him was gathered either. In fact, the only thing that was gathered was the fact that when the detective asked for a job application, the appellant said he doesn't have applications. That fact is consistent with what the victim said earlier, that when they were there and they asked for applications, he was told he doesn't have job applications. So, if anything, it corroborates one point that the victims made, but nothing more than that. And again, that was not hidden from the district attorney. No one was hiding anything. The entire packet was presented. The district attorney says that, says he reviewed everything and still found that there was probable cause for filing the criminal complaint. After that, it was presented to the judge, who again agreed and issued a warrant, finding probable cause for appellant's arrest. Unless the Court has any further questions, I'll submit on the briefs and the record. Thank you. Thank you. Rebuttal. Thank you. So basically what you're presented with is relying on the expert opinion of the DA and the detective. But I would point out that the expert opinion of somebody's expert opinion is a question of their credibility, is a question of fact for the jury. And so you have these experts that are telling you, they have no credibility because, in my opinion, they're telling you 1 plus 1 equals 3, and we all know but 1 plus 1 equals 2. That's the the ---- What are you referring to when you say expert opinion? Well, I mean, he's giving their professional opinion. Oh, just these minor inconsistencies. First of all, they're not minor. They're major. That's the person who made the judgment. You've acknowledged you don't have a basis for a pledge in corruption or anything else on the part of the judicial officer, suggested that the judges are busy and so forth. As to the district attorney, assistant district attorney, there's been no allegation of corruption, fraud, any personal vendetta, anything else. That person did, in fact, exercise judgment in filing a criminal complaint. Again, he was misled by ---- how did I expose that he was misled by the ---- He says that he knew what you've identified as the part that was hidden. No, he didn't. I deposed him. I asked him in his deposition, can you tell me if there's any inconsistencies? He says, no, not really. There are no inconsistencies. That was his position in deposition. Then I gave him the report. I said, here, read it. Take your time. Read it. Can you tell me if there's inconsistencies? He said, I recall the case. There were no inconsistencies. That's what he said. I mean, he was misled by the detectives, you know, how she presented the report, how she packaged it. That's what went on. And as to ---- Your time has expired. Is there anything else you want to say? One thing very quickly. And I also pointed out that, you know, I thought about deposing. Deposing a judge, a sitting judge, is a big deal. It's a major deal. And it's rather humiliating, too, and I don't think that it's right unless it's necessary. And I said, if that's required, I will depose Judge Deisman, and I will show you, and I'll give her the report, and I'll challenge her. I'll say, here, you take an hour and read it and tell me if there's inconsistencies. And this report in itself, you cannot spot. I'm saying factually, this report, it's not possible to spot the inconsistencies unless you really pay attention and you go back and look at it like a judicial officer, not like when I come into court, you know, as a judicial officer. I think we have your position. No. You've gone over time. Counsel left lots of time. We know your position. There's nothing more to say. Yes. Well, take your case. The case is submitted. Thank you for both. Thank both counsel for your arguments. The case just argued is submitted. We'll move to Wilson v. City of Long Beach.
judges: Schroeder, Clifton, Watford